THE STATE EX REL. BOARD OF EDUCATION OF THE CITY OF
SUPERIOR, Appellant, vs. HUNTER, City Treasurer, Respondent.

*October 2—October 20, 1903.*

*Taxation: Schools: Cities: Levy of school tax by county board:
Statutes construed.*

1. The word "town" in sec. 1074, Stats. 1898 (providing that the
   county board may determine "the amount to be raised by tax
   in each town for the support of common schools therein,"
   etc.), should be construed, under subd. 17, sec. 4971, in the
   broad sense of taxing district, whether town, city, or village;
   and the words "town clerk" in sec. 1079 include clerks in
   cities and villages as well.
2. The determination by the county board, pursuant to sec. 1074,
   Stats. 1898, of an amount to be raised by tax in a city or
   other taxing district for the support of schools therein, is a
   levy of the tax, since the statutes (secs. 1076, 1079) leave
   nothing to be done thereafter to raise the amount, except the
   performance of purely ministerial duties.
3. Such tax, though levied by the county board, is not a tax for
   county purposes, to be accounted for to the county treasurer,
   but is a town, city, or village tax, as the case may be; and
   its character is not altered by a misdescription of it in the
   warrant for its collection or by any other mistake in treating
   it as levied for county purposes.
4. Sec. 554, Stats. 1898, providing that the state superintendent
   shall withhold that portion of the state school fund which
   would otherwise go to any particular subdivision of the state
   if such subdivision shall have failed to raise by tax a school
   fund "as determined by the county board in pursuance of sec.
   1074," does not indicate a legislative intention that such determination of the county board should merely create a condition precedent, to be satisfied by the power to levy taxes
   lodged in the taxing district, but was intended to secure the
   actual placing of the required sum to the credit of the school
   board in the taxing district, authority being given to supply
   any deficiency by transfer from the general funds of the district.
5. Under sec. 111 of the Superior city charter (ch. 124, Laws of
   1891), making it the duty of the city treasurer, after payment

of the state taxes, to set aside all sums of money levied for school purposes, no distinction is to be made between taxes levied by the board of education and the school tax levied by the county board pursuant to sec. 1074, Stats. 1898.

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

*Mandamus* action to compel the treasurer of the city of Superior, Douglas county, Wisconsin, to set aside, for the use of the board of education of such city, of the moneys in his hands, a certain sum on account of the county levy of taxes for school purposes for 1902.

The material facts are these: The board of education of the city of Superior, under the charter of such city, has power to annually levy the taxes necessary to raise the requisite funds for school purposes. The board exercised its power in that regard for the year 1902. The county board of supervisors subsequently levied, in form, a county school tax of $17,025.91 upon the taxable property of the city of Superior, to be placed in the tax roll of 1902 for collection. Such levy was duly certified to the city clerk of such city as a county tax, with other such taxes. It was so extended upon the tax roll of the city for 1902. The total of county taxes was $102,999.31. The warrant attached to the roll, in specifying the moneys to be paid to the county treasurer for county purposes, included therein the county school tax levy of $17,025.91. The amount of the delinquent return and the county orders taken in by the city treasurer in payment of taxes of 1902 was $107,661.78. The sum actually collected upon the county school tax levy was $14,625.25. That sum the treasurer set aside out of the total moneys collected by him for the use of the school board. The board demanded that he so set aside the balance necessary to make up a sum equal to the county school tax levy. He refused to do so, claiming that in no event could he be required to so set aside

money out of a county levy for school purposes in excess of the amount actually realized by him therefrom.

Upon a verified petition on behalf of the board of education, setting forth such facts and others not necessary to mention, an alternative writ of *mandamus* was sued out, requiring the city treasurer to do the act he had refused to perform as aforesaid, or show cause why to the contrary. He demurred to the sufficiency of the petition. The demurrer was sustained, and the relators appealed.

*Geo. B. Hudnall,* for the appellant.

*Thos. E. Lyons,* for the respondent, contended that the statute in question has no application to the city of Superior; that if it be held applicable it must be construed as authorizing the county board to prescribe a minimum limit of taxes to be raised for the support of schools; and that the tax in question not being included in the amount levied by the board of education or the common council, the same is illegal and not enforceable by the defendant treasurer.

MARSHALL, J. The main question submitted for decision is this: Was the $17,025.91, extended upon the tax roll as a county school tax, a legal city school tax, to be treated as other such taxes? That depends upon a construction of secs. 1074, 1076, 1079, Stats. 1898. Respondent suggests at the outset that the first section, which creates the power of the county board to levy school taxes, if any exists, applies only to towns. True, the term "town" only is used. But, viewing the entire scheme of the statutes in relation to the treatment of school taxes by county boards, it seems quite clear that such term was used in the broad sense of taxing district, whether town, city, or village, and that it should be so construed under subd. 17, sec. 4971, Stats. 1898, providing that the word "town," wherever used in the statutes, "may be construed to include all cities, wards, or districts unless such construction would be repugnant to the provisions of any act.

specially relating to the same." When all the provisions of law bearing on the subject are taken together, not only does it appear that there is no repugnancy therein to such a construction, but it appears that no other construction can be adopted without sacrificing harmony. We will quote the vital part of each of such provisions:

"Each town *and city* shall be required to raise by tax, annually, for the support of common schools therein, a sum not less than one half the amount received by such town or city respectively for school purposes from the income of the school fund." Sec. 4, art. X, Const.

"Provision shall be made by law for the distribution of the income of the school fund among the several towns and cities of the state for the support of common schools therein, . . . and no appropriation shall be made from the school fund to any city or town for the year in which said city or town shall fail to raise such tax." Sec. 5, art. X, Const.

"The school fund income . . . shall be apportioned by the state superintendent between the tenth and fifteenth days of December in each year. Such apportionment shall be made among the several counties, towns, villages and cities according to the number of children in each over the age of four and under the age of twenty years, as shown by the reports made to the state superintendent for the year preceding, ending June 30. Whenever any town, village or city shall fail in any year to raise by tax, for the support of common schools therein, a sum equal to the amount of its share of such school fund and other income as determined by the county board in pursuance of section 1074, the amount of the apportionment to such town, village or city for that year shall be withheld from the next succeeding apportionment, unless," etc. Sec. 554, Stats. 1898.

"The county board shall . . . determine by resolution the amount of tax to be levied in their county for county purposes for the year, and also the amount to be raised by tax in each town for the support of common schools therein for the ensuing year, which shall not in any town be less than the amount apportioned to such town in the last apportionment of the income of the school fund," etc. Sec. 1074, Stats. 1898.

"The county clerk shall apportion the county tax  .  .  . among the several towns, cities and such villages as aforesaid therein;  .  .  .  and shall carry out in the record book aforesaid, opposite to the name of each in separate columns, the amount of state taxes and charges and the amount of county taxes so apportioned thereto, and also the amount to be raised as aforesaid for the support of common schools therein;  .  .  .  and within ten days after the assessment of values by the county board he shall certify to the clerk of, and charge to, each town, city and such village the amount of each and all such taxes so apportioned to and levied upon the same." Sec. 1076, Stats. 1898.

"Upon the receipt of the certificate of apportionment from the county clerk said town clerk shall, upon a uniform percentage, calculate and carry out in one item opposite to each valuation in said tax roll the amount required to be raised upon such valuation to realize in his town the whole amount of state, county, school and other taxes so certified," etc. Sec. 1079, Stats. 1898.

Thus it will be seen that the constitutional plan was to impose on each subdivision of the state acting directly in the collection of taxes, whether town, city, or village, the duty to raise each year, for school purposes, an amount at least equal to the public money received from the state for such year. The word "city" is used with the same significance in the constitution as the word "town." The same is true of sec. 554, which relates to the duty of the state superintendent of schools. While the section relating to the power of the county board to order the raising of school taxes uses only the word "town," it is followed by the section covering the subject of the certification of the action of the county board to the taxing districts, using the words "town," "city," and "village," referring back, clearly, to the same taxing districts that are covered by the word "town" in sec. 1074. Sec. 1079, providing what shall be done pursuant to the county clerk's certificate mentioned in sec. 1076, says: "said town clerk shall," etc. It is obvious, however, that the reference was intended

to include every clerk to whom a certificate is required to be sent; that is, to the clerks of villages and cities as well as of towns.

It seems to follow clearly from the foregoing that the county board had authority to determine by resolution an amount, resting on its mandate alone, to be raised in the city of Superior for 1902, for the support of common schools therein for the ensuing year. The authority was, not to impose upon the city a tax for county purposes, but a tax for city purposes. If the tax were deemed to have been levied as a county tax, and to have that character, we should be compelled to hold, as in *State ex rel. School Directors v. Nelson,* 105 Wis. 111, 80 N. W. 1105, that it was without authority of law, all payments thereof mere donations, and the clerk not bound to credit to the board of education any sum of money in excess of what he received. The facts of that case were these: A sum ordered to be raised under sec. 1074 was extended upon the tax roll of the taxing district as a county school tax and was treated as a tax for county purposes, a part being collected and turned over to the county treasurer. The question raised upon such facts was whether the money so turned over was county money and properly in the custody of the county treasurer, or whether the proper custodian of the fund was the treasurer of the taxing district for the benefit of the schools therein. Deciding those propositions the court, speaking by Mr. Justice DODGE, said in substance this:

The whole transaction, strictly speaking, was void. The taxpayers, however, are not in a position to reclaim the money voluntarily paid. We may look upon it as a donation and consider which is the donee corporation. The county board had no authority to levy any school taxes for the use of the county. It had both the power and the duty to include in its resolution levying county taxes, and in the certification thereof to the town clerk, a direction to raise a certain amount of school taxes for the use of the school district corporation.

The misdescription of the item as a county school tax was a mere mistake. The act in fact done was a direction author- ized by statute. The subsequent acts in relation to the tax must be deemed to have occurred in executing that direction. There was the extension upon the tax roll and collection of the amount directed for the purpose prescribed by law—the use of the school district. The mistakes which thereafter oc- curred, of carrying the money collected into the funds of the county, did not change the ownership thereof. Therefore, such fund remains the property of the school district and should be in the custody of the town treasurer for its use.

Certainly, that leaves very little to be said as to the nature of the tax in question. It would be a play upon words, it seems, to hold that a resolution of a county board, levying taxes upon the taxable property of a county, the taxes to be apportioned between the various taxing districts thereof, and also containing a direction, as to each such taxing district, to raise a specified sum of money for school purposes therein, the amount of the county tax to be apportioned to each dis- trict and the amount of school taxes directed to be raised therein to be certified to the clerk thereof and placed in the tax roll for collection, is not a levy of taxes as to the school tax as well as the county tax. The word "levy" does not occur in sec. 1074 as to county taxes, nor as to school taxes. The power to determine the total amount of taxes to be raised for county purposes, in connection with the ministerial duty of the clerk to apportion the same among the various taxing districts of the county upon a basis predetermined by the board, is in legal effect a direction to each such taxing district to raise by taxation for the use of the county its proportional part; yet no one would venture to say that such action does not constitute a levy of taxes. Obviously, under the statute, the county board directs the raising, in each taxing district in the county, of a specified sum for county purposes, and a further specified fund for school purposes in such district,

the legal effect in one case, as well as in the other, being to levy a tax.

The scheme of the statutes seems to be plainly as indicated. Three steps are rendered essential to charge the taxable property in a taxing district with the county school tax. They show unmistakably that the sum directed to be raised in the district by the board must, by force of its mandate, when duly evidenced to the clerk of the district, regardless of any other levy of school taxes, be spread upon the tax roll. First, the county board must "determine by resolution the amount of tax to be levied in their county for county purposes for the year, and also the amount to be raised by tax in each" taxing district "for the support of common schools therein for the ensuing year." Sec. 1074. Second, the county clerk is required to carry out in a book, opposite to the name of each taxing district in his county, "the amount of state taxes and charges and the amount of county taxes so apportioned thereto, and also the amount to be raised as aforesaid for the support of common schools therein;" and certify the same to the clerk of each such district, and to charge to such district "the amount of each and all such taxes so apportioned to and levied upon the same." Sec. 1076. Third, upon receipt by the clerk of any taxing district of the county clerk's certificate made as aforesaid, he is required to "carry out in one item opposite to each valuation in said tax roll the amount required to be raised upon such valuation to realize in his town the whole amount of state, county, school and other taxes so certified." Sec. 1079.

The law contemplates that the county board shall exercise legislative authority to levy the tax. It leaves nothing to be done thereafter to raise the amount of the levy except the performance of purely ministerial duties. The tax, as to each taxing district, though levied by the county board, is a town, city, or village tax, as the case may be, not to be ac-

counted for to the county treasurer. That is evident notwithstanding the language of sec. 1076, that the county school tax certified to any taxing district shall be charged to such district the same as county and state taxes so certified. The school tax does not concern the county at all, as it is raised in the taxing district for the benefit of the schools therein. That such is the legislative idea is evidenced by secs. 1080, 1081 and 1116. The first section requires the treasurer of the taxing district, before the time for the delivery of the tax roll to him, to give a bond to the county treasurer in double the amount of the state and county taxes apportioned to his district. It will be noted that no obligation to account to the county treasurer for school taxes ordered to be raised is recognized; that only such taxes are recognized as are required to be apportioned between the various taxing districts of the county by the county clerk. Sec. 1081 provides for the form of the warrant to be attached to the tax roll and delivered to the treasurer of the taxing district. Such form is to the effect that the treasurer of such district shall account to the county treasurer for state taxes and taxes levied for county purposes. Obviously, that does not include a school tax levied upon the taxing districts for the benefit of the schools therein. Sec. 1116 provides that the bond given by the treasurer of the taxing district to the county treasurer before receiving the tax roll, shall be discharged upon his accounting to the county treasurer for the full amount of the state taxes and the full amount of county taxes. The words "full amount of county taxes" obviously refer to the words "county taxes" in sec. 1080 which, as before indicated, excludes school taxes.

It has been suggested that sec. 554, in that it provides that the state superintendent, in apportioning the state school fund for any year, shall withhold that portion which would otherwise go to any particular subdivision of the state if such subdivision shall have failed the previous year to raise by

tax a school fund, "as determined by the county board in pursuance of sec. 1074," indicates a legislative purpose to treat the determination of the county board under such section as the mere creation of a condition precedent, to be satisfied by the power to levy taxes lodged in the taxing districts. Since the execution of the mandatory requirements of secs. 1074, 1076 and 1079, if the taxes spread upon the tax roll as to any taxing district are collected, must necessarily result in raising the taxes as to such district essential to its right to participate in the distribution of the state school fund, it seems that the purpose of sec. 554 is to enforce the performance of such mandatory duties, and to secure the actual placing of a sum of money to the credit of the school board in the taxing district equal to its proper portion of the state school fund upon the peril of such portion being withheld. It will be noted that the section deals with the necessity of having a fund actually available as a condition precedent to participation in the benefits of the state school fund, in harmony with sec. 5, art. X, Const. That is the constitutional and legislative plan as well. The condition precedent of the constitution, and of sec. 554, does not stop with the mere levy of the school tax and extension of it upon the tax roll. It includes its collection or the fund being otherwise supplied. That is made unmistakable by the language of sec. 554 to the effect that any deficiency in the tax necessary to produce the fund ordered to be raised by the county board in any taxing district for the benefit of the schools therein, may be supplied by transferring the amount of the deficit to the credit of the school fund, from the general funds of the district. Thus every taxing district is not only required to place upon its tax roll for collection a school tax designed to produce the money directed to be raised by the county board for the benefit of the schools therein, but is bound to see that the levy actually yields the whole amount thereof, either by collections or by transferring, on account of uncollected taxes, money from the

general funds of the district. That is the only way the constitutional requisite to the right to participate in the distribution of the state school fund can be fully satisfied.

The result of what we have said is that the $17,025.91, ordered by the county board of Douglas county to be raised in the city of Superior for the benefit of the schools therein for the year 1902, was legally extended upon the tax roll of such city as a city tax levied by county authority, not for the county, but for the city. The treatment of the levy in the treasurer's warrant as one for county purposes, by including it in the amount to be accounted for to the county treasurer, did not make it a county tax. Its character was fixed by the statute, not by the mistake of the city clerk in making out the warrant to the city treasurer, or any other mistake in treating the taxes as levied for county purposes. Being a levy of school taxes for the city of Superior there can be no reasonable controversy as to the right of the relator in respect thereto. Such right is plainly fixed by sec. 111 of the city charter (ch. 124, Laws of 1891), which provides that the city treasurer, each year, after payment of the state taxes for such year, "shall set aside all sums of money levied for school purposes." No distinction is there made between taxes voted by the school board and taxes directed to be raised by the county board. That supports fully the position of the relator and appellant. It was the duty of respondent, at the time of the issuance of the alternative writ of *mandamus,* to set aside, out of the money in his hands collected under his tax warrant of 1902, for the use of the school board, a sufficient sum to make, with the amount theretofore set aside, the full amount directed by the county board to be raised by the city for the benefit of the schools therein, the deficiency being $2,400.66. The order appealed from must therefore be reversed and the cause remanded with directions to overrule the demurrer and for further proceedings in accordance with this opinion.

*By the Court.*—So ordered.