Oconto Company, Appellant, vs. Town of Townsend and another, Respondents.

*September 16, 1932—January 10, 1933.*

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott,* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott.*

*John B. Chase* of Oconto, for the respondent town of Townsend.

*Giles V. Megan,* district attorney of Oconto county, and *V. J. O'Kelliher* of Oconto of counsel, for the respondent Oconto county.

The following opinion was filed October 11, 1932:

OWEN, J.   This action was brought by the plaintiff against the town of Townsend to recover an alleged invalid tax, paid to the town treasurer of the town of Townsend under protest.   The tax claimed to be illegal was a county tax levied by the county board of Oconto county at its annual meeting held in 1930.   The assessed valuation of the county for the year 1929 was $27,272,295.   Sec. 70.62 (2), Stats.,  provides that the "total amount of county taxes assessed, levied and carried out against the taxable property of any county in any one year shall not exceed in the whole one per centum of the total valuation of said county for the preceding year as fixed by the Tax Commission, excepting in so far as a larger per centum may be necessary in order to meet indebtedness incurred prior to the passage and publication of this act."   Plaintiff contends that the total amount of taxes which the county was authorized to levy in 1930 was $272,722.95.   The amount actually levied was $344,501.84.   According to plaintiff's contention, the amount levied in excess of $272,722.95, amounting to $71,778.89, was an invalid levy. It claims that the proportion of this invalid levy assessed against it and paid under protest amounted to $219.15, which it is entitled to recover.

The first limitation upon the amount of county taxes which may be levied is found in ch. 293, Laws of 1895, and

the limitation there fixed was three per centum of the total assessed valuation of the county. This limitation was changed to one-half of one per centum by ch. 439, Laws of 1903. It was again changed by ch. 430, Laws of 1907, fixing the limitation at one per centum, which limitation has obtained to the present time. The defendants do not controvert the obvious fact that the tax levied by the county board in 1930 exceeded the one per centum limitation in the amount above indicated. Their contention is that many items entering into the total levy are not included within the one per centum limitation. They make a general contention to the effect that, since the limitation of one per centum was fixed in 1907, much legislation has been passed imposing added burdens upon the county calling for the assessment of taxes for many purposes additional to those for which counties were required to raise taxes at the time the limitation of one per centum was fixed, and that it must be presumed that as the legislature added these additional burdens, making it necessary for the levy of taxes for new purposes, it intended such levies to be in addition to and not included within the one per centum limitation.

The one per centum limitation must be held to apply in every instance where the legislature imposes additional burdens calling for additional taxes unless the legislative intent be revealed, either expressly or by implication, that the additional burden is not to be included within the one per centum limitation. It was not the legislative thought, when the one per centum limitation was imposed, that counties would assess up to that limitation. The purpose was to prevent the burden of taxation by the county exceeding the one per centum limitation. As additional burdens were imposed, it might well have been assumed by the legislature that the one per centum limitation afforded ample opportunity for the county to discharge its obligations imposed by the new legislation, keeping within the one per centum

limitation. In case all the burdens imposed upon the county crowded. the one per centum limitation, then it became the duty of the county to balance its budget and so arrange its expenditures that the total thereof would not exceed the one per centum limitation. This must be taken as the true purpose of the one per centum limitation, except in those cases where the legislature at the time of imposing new obligations upon the county disclosed an intention that such additional obligations were not to be considered within the one per centum limitation.

The defendants place great reliance upon the principle announced in *Oconto City Water Supply Co. v. City of Oconto,* 105 Wis. 76, 80 N. W. 1113, and in *Kyes v. St. Croix County,* 108 Wis. 136, 83 N. W. 637. Those cases laid down the rule that "when the legislature confers authority upon a municipal body having power to levy taxes to contract a debt for some specific object, and makes no special provision for its payment, the very act of conferring the power to create the liability by implication clothes the municipal authorities with power to levy the necessary tax to discharge it," irrespective of any general limitation imposed upon the taxing power. This principle was elucidated in *U. S. ex rel. Ranger v. New Orleans,* 98 U. S. 381, at p. 395, as follows:

"Indeed, it is always to be assumed, in the absence of clear restrictive provisions, that when the legislature grants to a city the power to create a debt, it intends that the city shall pay it, and that the payment shall not be left to its caprice or pleasure. When, therefore, a power to contract a debt is conferred, it must be held that a corresponding power of providing for its payment is also conferred. The latter is implied in the grant of the former, and such implication cannot be overcome except by express words excluding it."

We cannot see that this principle has any application here. The county has not been authorized to incur any specific

debt or to enter into any specific contract. Unless the municipality has been authorized to enter into a contract with some third party the carrying out of which on its part requires the levy of a tax, the principle above stated has no application.

We therefore proceed to examine the various items entering into the total of this tax levy with a view of ascertaining whether the legislature intended that any of them should not be included within the one per centum limitation.

First of all, the levy includes an item of $43,750 for county school tax. The trial court excluded this item as not being within the one per centum limitation. There is no question but that prior to the passage of ch. 536, Laws of 1927, this item did not constitute a county tax. *State ex rel. Board of Education v. Hunter,* 119 Wis. 450, 96 N. W. 921. As the law stood prior thereto, the county board was required to determine "the amount to be raised by tax in each town for the support of common schools for the ensuing year, which shall not in any town be less than the amount apportioned to such town in the last apportionment of the income of the school fund." Sec. 70.62, Stats. 1925. This was simply a provision requiring towns to raise at least as much for school purposes as they received from the state for such purposes. It was a tax with which the county had nothing to do and, rather obviously, did not constitute a county tax, as was distinctly held in the *Hunter Case, supra.* However, ch. 536, Laws of 1927, generally revised the law extending state aid to school districts, and placed such state aid upon a different basis. The underlying principle of the law is, that the education of the youth of the state is a matter of state concern, and that the property of the state should in a measure bear the expense of educating the youth of the state. This principle was extended to the counties, and the county was required to levy a tax on all of the property of the county to be apportioned to

the school districts in the county upon the basis therein fixed. Sec. 70.62, Stats. 1929, required the county board to determine "the amount to be raised by tax in each town, village and city for the support of common schools for the ensuing year, in accordance with the provisions of section 59.075." Sec. 59.075 was created by ch. 536, Laws of 1927, and provides that "The county board of each county is empowered at or before its November meeting each year to order the levying of a tax upon the aggregate assessed valuation of the county for the common schools in an amount not less than the product of two hundred fifty dollars multiplied by the number of public elementary teachers employed in the county during the preceding school year as certified by the county superintendent of schools and by city superintendents of schools not under the supervision of the county superintendent." It is to be noted that under the old law the county board was required to levy a school tax which shall not in any town be less than the amount apportioned to such town in the last apportionment of the income of the school fund. Under the new law, sec. 59.075, the county board is empowered to make a levy for such purpose. We see the difference in the purpose of the two laws when we consult sec. 20.245 (5) (a), Stats. 1929, which provides that when the county shall fail to levy the tax authorized by sec. 59.075 the schools in that county shall not share in the state aid. The sum and substance of this law is that there is not only a state aid for schools but also a county aid for schools, and that in counties where the county aid is not extended, the schools do not participate in the state aid. The tax is levied upon all the taxable property of the county. It is not distributed back to the various towns in the amounts contributed by such towns, but in accordance with the number of teachers that have been employed in such towns. This clearly makes the present school tax

levied by the county board a county tax. This is a substantial addition to the functions of the county since the original limitation upon taxation was fixed, yet we find nowhere in the statute any intimation that it was not the legislative intent to include such added tax within the one per centum limitation. It will be noticed that the county can do as it pleases about levying this tax. If it cannot levy the tax without exceeding the one per centum limitation, then it may forego the tax. We hold that this item was improperly excluded by the trial court in arriving at the amount of the levy which was within the one per centum limitation.

The levy complained of also included $4,500 as salary and expenses of county superintendent of schools. Sec. 70.62, Stats. 1929, provides "that the county board shall, by separate resolution adopted by a majority of the members of the board not prohibited from voting thereon by section 39.01, determine the amount of tax to be levied to pay the compensation and allowances of the county superintendents of schools and designate therein the cities exempt from taxation therefor." Sec. 39.01 (5) provides that "Cities which have a city superintendent of schools shall form no part of the county superintendent's district, shall bear no part of the expense connected with the office of county superintendent of schools; and shall have no part in the determination of any question or matter connected with or arising out of said office, nor shall any elector or supervisor of such city have any voice therein." The trial court excluded this item as not being within the one per centum limitation. He evidently did this because of the phraseology of sec. 70.62, which requires the county board to determine (1) the amount of taxes to be levied in their county for county purposes; (2) the amount to be raised for the support of common schools; and (3), by separate

resolution, the amount to be levied to pay the compensation of the county superintendent of schools. The reason for the adoption of a separate resolution with reference to the salary of the superintendent of schools was due to the fact that those members from cities having a superintendent of schools were disqualified from voting on such resolution, hence it could not be adopted as a part of a resolution concerning which all were entitled to vote. The county superintendent is a county officer, even though his district is less than the whole county. *Sheboygan County v. Gaffron,* 143 Wis. 124, 126 N. W. 542. This office was in existence at the time of the imposition of the one per centum limitation, and there is no reason to believe that the legislature did not intend his salary and expenses to be included within the one per centum limitation. The trial court was in error in excluding this item.

The trial court also excluded an item of $750 for county bridge aid, raised pursuant to the provisions of sec. 87.01, Stats. For reasons already discussed, we can see no ground upon which that item can be excluded. We discover no provision anywhere in the statute to indicate, either expressly or by implication, that the legislature did not intend the amount so appropriated to be included within the one per centum limitation.

The trial court also excluded an item of $22,025 for bonds and interest on bonds. That this item should not .be excluded is plainly apparent from the provisions of sec. 70.62, which fixes the one per centum limitation, "excepting in so far as a larger per centum may be necessary in order to meet indebtedness incurred prior to the passage and publication of this act." The last publication of the act was in 1907 and, consequently, there was no indebtedness in 1930 incurred before the passage of the act. The express provision that amounts required to meet indebtedness

incurred prior to the publication of the act negatives the idea that indebtedness incurred after the publication of the act shall be excluded from the one per centum limitation.

The trial court also excluded an item of $1,365.56 for soldiers' relief, levied under the provisions of sec. 45.10, Stats. That section of the statutes makes it the duty of every county board to annually levy, "in addition to all other taxes, a tax sufficient to carry out the purposes of this section." The phrase "in addition to all other taxes" indicates a legislative intent that, at all events, the county boards shall levy the tax provided by that section, whether or not the levying of the tax exceeds the one per centum limitation. There could be no other reason for the phrase. Taxes levied under this section were not intended to be included within the one per centum limitation.

We arrive at the same conclusion with reference to highway taxes levied under the provisions of sec. 83.06, Stats. Sub. (4) of that section provides that "The county board shall annually levy a tax of not more than two mills on the dollar, which tax shall be in addition to all other taxes, and shall be kept in a fund known as the 'County Road and Bridge Fund;' and expenditures from said fund shall be made only for the purposes of constructing and maintaining highways and bridges under the provisions of this chapter, and for the purpose of purchasing, operating, renting and repairing machinery, quarries and gravel pits used in such construction and maintenance." The levy included an item of $120,000 levied under the authority of this section. The court found that this item was $131,100, which was erroneous. The total amount of tax collected for highway purposes was $121,100, but $1,100 was levied under the provisions of sec. 83.14 as aid to towns. It will be noted that the tax levied under sec. 83.06 "shall be in addition to all other taxes." This indicates a clear legislative intent that

taxes levied pursuant to the authority of that section shall not be included within the one per centum limitation. However, a question of statutory construction arises by reason of the fact that the original act, ch. 337, Laws of 1911 (sec. 1317m—5 (6), Stats.), provided that such tax shall be in addition to all other *highway* taxes. This remained in the law until the revision of 1923 (ch. 108), when the revisor struck out the word "highway" and making the provision read "in addition to all other taxes." It is contended by the plaintiff that the revisor did not intend to change the law, that he so said in his notes, and that the law should now be construed to read as it did before the revision, and that the levy authorized by sec. 83.06 (4) should be construed as one "in addition to all other *highway* taxes," and not "in addition to all other taxes," citing *Van Brunt v. Joint School District,* 185 Wis. 493, 201 N. W. 755, and *Wisconsin G. & E. Co. v. Fort Atkinson,* 193 Wis. 232, 213 N. W. 873. It is true that where there is ambiguity in a statute that has met with revision at the hands of the revisor, it will be presumed that no change in the law was intended, and the statute will be construed as expressing the law as it was prior to the revision. However, in order to invoke that rule there must be ambiguity in the statute. We have recently considered this question in *Kugler v. Milwaukee,* 208 Wis. 251, 242 N. W. 481, and reached the conclusion that when an enactment of a revisor's bill leaves the law ambiguous, "no doubt full force should be given to the idea that, as no change in the law was intended, no change in the law was effected; but where, as here, there is no ambiguity, but a plain declaration of repeal, we cannot avoid giving that declaration effect." The law under consideration may be the result of error, but the present statutes, upon which our citizens have a right to rely, suggest no ambiguity and afford no opportunity for construction. The law must

therefore be interpreted as it reads. We conclude that the two-mill tax levied pursuant to sec. 83.06 (4) is not to be included within the one per centum limitation, but that the entire levy of two mills authorized by that section may be in addition to the one per centum limitation.

However, $120,000 was actually levied for highway purposes, which is $65,555.41 in excess of the two mills additional tax authorized by sec. 83.06. If it should be held that sec. 83.06 (4) is a limitation upon the amount of highway taxes which may be levied by the county, then that excess would be invalid, whether or not the total amount of the other taxes was under the one per centum limitation. But we do not construe sec. 83.06 (4) as a limitation upon the power of the county to levy highway taxes. Rather extensive obligations are imposed upon the county with reference to the maintenance of highways, and it is not to be presumed that the legislature intended to limit the county levy for that purpose to two mills. Sec. 83.06 (4) is rather a command than a limitation. It provides that the county board shall annually levy a tax to be known as the "County Road and Bridge Fund" and expenditures therefrom shall be for the purposes therein enumerated. This does not indicate a limitation upon the power of the county to levy a tax for highway purposes if it can be done within the one per centum limitation, but rather commands the county to constitute a "County Road and Bridge Fund," for which purpose it may levy a tax "in addition to all other taxes," and not to exceed two mills. The county was therefore authorized to levy a tax in 1930 up to the full amount of its one per centum limitation, equal to $272,722.95. To this sum is to be added $1,365.56 which was assessed for the soldiers' relief fund, and $54,444.59 which it might assess in highway taxes in addition to the one per centum limitation under sec. 83.06 (4). This makes the authorized

assessment of the county $328,533.10. The levy actually made of $344,501.84 was $15,968.74 in excess of that which the county was authorized to levy. The plaintiff will be entitled to recover its *pro rata* share of this amount.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.

The following opinion was filed January 10, 1933:

Owen, J. (*on motion for rehearing*). The trial judge deducted from the amount of the county levy moneys included therein which were levied under sec. 83.06 (4), Stats. This court held that only two mills on the assessed valuation levied under this section could be deducted from the one per cent. limitation. The motion for rehearing does not quarrel with this construction of the statute, but the claim is that the record does not show that more than $5,000 included in the total levy was levied under the provisions of this section, and that this is the only amount that could be deducted from the one per cent. limitation.

It is not easy to determine from the record the respective sections under which the highway taxes were levied. The trial court found that all of the highway taxes, except those noted in the opinion, were levied under sec. 83.06 (4). This finding was not challenged on the appeal, and it is conceded that the point here urged was not pressed upon the original hearing. In view of these considerations, we are not disposed at this time to make a reinvestigation for the purpose of determining whether a larger amount levied for highway purposes should have been deducted from the county levy. Under the circumstances, we are disposed to apply the principle of *De minimis non curat lex.* The motion upon this ground is therefore denied.

We take this occasion, however, to elaborate somewhat upon another feature of the opinion which it appears has given rise to some misunderstanding with reference to the scope and effect of the opinion herein rendered. After the motion for rehearing had been filed, and while we still had jurisdiction and control of the case, we were informed by the district attorney's office of the county of Milwaukee that bond houses construed the opinion as limiting the amount of taxes which could be devoted to, or used for the purpose of, the payment of the principal and interest of county bonds. Realizing the seriousness of such an interpretation of the opinion, we took occasion to invite briefs *amici curiæ* upon this phase of the opinion.

The opinion seemed to give the impression in some quarters that the fact that moneys levied for the purpose of meeting the principal and interest of the bonded indebtedness of a county should be taken into consideration in determining whether the county had exceeded the limit of taxation of one per cent. prescribed by sec. 70.62 (2), jeopardized the security of bonds issued by the county for which taxes had already been levied. Such impression is most unfortunate, no matter whether the opinion is reasonably susceptible to such construction or not. At any rate, it becomes our duty to negative any such purpose, and to emphatically declare that the limitation of one per cent. set by the provisions of sec. 70.62 (2) does not and cannot have any effect upon taxes theretofore levied for the purpose of meeting the principal and interest of county bonds.

But our constitution and statutes require that at the time of incurring any county indebtedness, or the issuance of any county bonds, a tax shall be levied for the purpose of meeting the principal and interest of such indebtedness or bonds when it becomes due. That tax is irrevocable. It stands for all time. The provisions of sec. 70.62 (2) do not and

cannot affect it. That tax is material to be considered only for the purpose of determining the amount of tax in addition that may be levied under sec. 70.62 (2). All taxes levied under that section, together with the taxes theretofore levied for the purpose of meeting the principal and interest of county indebtedness, cannot exceed one per cent. The greater the amount that has been theretofore levied for the purpose of meeting the principal and interest of county indebtedness but limits the amount that the county may levy under sec. 70.62 (2) for all other purposes.

The only question considered in the main opinion was whether taxes theretofore levied for the purpose of meeting the principal and interest of county indebtedness should be computed in determining the amount that might be levied under sec. 70.62 (2). It seems plain by the provisions of sec. 70.62 (2) itself that such indebtedness should be taken into consideration where the indebtedness had been incurred subsequent to the passage and publication of the act. This could not serve to invalidate taxes already levied for the payment of indebtedness, but is only material to be considered upon the question of the amount in addition thereto that may be levied. We saw no danger from such a construction of the statute in view of the fact that if the total amount of authorized indebtedness had been incurred to run twenty years, the sum necessary to pay the principal would amount to only one-half of the amount authorized by sec. 70.62. That left the county board one-half of the amount authorized by that section for purposes other than the payment of its indebtedness, and we could see no reason why the legislature might not have so intended. The only result would be to compel counties to curtail current expenditures. In no event could they jeopardize the payment of existing indebtedness. Whether this amounts to an unlimited *ad valorem* tax for the payment of such indebtedness, which seems to be required by some regulations

we do not know, it does make certain and specific provisions for the payment of the exact indebtedness together with interest according to contract at the time it becomes due. The necessity of making provision for the collection of further taxes for that purpose is not apparent. A definite provision for the collection of taxes sufficient to discharge the debt when due would seem to answer all the requirements of an unlimited *ad valorem* tax. But whether it does or not, this court cannot change the fact that this is the manner in which the legislature has authorized the imposition of taxes for the discharge of municipal indebtedness.

The whole trend and history of the decisions of this court are as favorable to the collection of municipal indebtedness as any system can well be. It is thoroughly established in this state that a municipality that has received and used the moneys of creditors cannot escape the repayment of such moneys because of any invalidity in the bonds issued for the repayment thereof.

Under these decisions the municipality is liable to any creditor for money had and received, and any one who has loaned money to the municipality which has been received and used by the municipality for municipal purposes may recover of the municipality, and the amount of the judgment so recovered must be placed upon the next tax roll and collected with other moneys. Sec. 66.09, Stats. The amount of such levies will not come within the limitation of sec. 70.62, and affords the creditor a sure and certain way of collecting the moneys which he may have loaned to any municipality,—and this even though there be some technical error in the issuance of the bonds upon which he loaned his money.

While we regret the misconstruction placed upon the opinion in this case, we do not yet feel that the opinion was properly susceptible to such a misconstruction; but,

whether it was or not, we take this opportunity of giving assurance that the provisions of sec. 70.62 do not in any manner impair the taxes levied for the payment of municipal indebtedness at or before the time such indebtedness is incurred under the provisions of our constitution and statutes. If the tax be then valid, it is forever irrevocable. The one per cent. limitation provided for by sec. 70.62 no doubt applies at the time such taxes are levied. Although the constitution authorizes a municipality to incur an indebtedness equal to five per cent. of its valuation, that provision of the constitution is in the nature of a limitation which may further be limited by statute. It is not a grant of power to the municipality to incur indebtedness in the amount specified. That grant of power must come from the legislature, and the constitutional provision is a limitation upon the power which the legislature may extend. In no event may the amount exceed five per cent. However, the legislature may limit it to an amount less than five per cent. · It is conceivable that taxes levied for the purpose of discharging municipal bonds, if they were short-term loans, could exceed the one per cent. limitation set by sec. 70.62. We hold that so long as sec. 70.62 remains, it furnishes an insurmountable barrier to a greater levy for the purpose of providing taxes for the payment of future municipal loans. While that is a situation which conceivably could arise, it is not one apt to arise; and if it becomes likely to arise, it is a situation which should receive the attention and correction of the legislature. So far as we understand the practical situation in this state, said sec. 70.62 does not presently unduly restrain the incurring of county indebtedness by the various counties of this state.