**Sheldon M. GRENGS, Plaintiff-Appellant,**

v.

**TWENTIETH CENTURY FOX FILM CORPORATION et al., Defendants-Appellees.**

**Nos. 11548, 11609.**

United States Court of Appeals
Seventh Circuit.

April 16, 1956.

Rehearing Denied May 17, 1956.

**326**

Louis B. Schwartz, Samuel P. Halpern, Minneapolis, Minn., Darrell O. Hibbard, Eau Claire, Wis., for appellant.

Lester S. Clemons, Steven E. Keane, Milwaukee, Wis., George L. Ruder, Wausau, Wis., John Fletcher Caskey, New York City, Lines, Spooner & Quarles, Milwaukee, Wis., of counsel, for appellees.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Appeals were taken by plaintiff from judgment orders of the district court, one of which (in No. 11548) dismissed his action as to the defendants Fox Wisconsin Theatres, Inc., Fox Valley Theatres Corporation, Fox Wisconsin Amusement Corporation and Wausau Theatres Company, herein sometimes referred to as "exhibitors", without prejudice as to plaintiff's cause of action against the remaining defendants, and the other of which (in No. 11609) dismissed plaintiff's complaint with prejudice, as to the remaining defendants,—Twentieth Century Fox Film Corporation, Loew's Incorporated, RKO Radio Pictures Incorporated, Warner Bros. Pictures Distributing Corporation, Paramount Film Distributing Corporation, Universal Film Exchanges, Inc., Columbia Pictures Corporation, and United Artists Corporation, herein sometimes referred to as "distributors" or "producers". We have consolidated the cases for hearing in this court.

Plaintiff's entire action against all the defendants, both exhibitors and distributors, is contained in his amended complaint. He seeks to recover treble damages and cost of suit, including a reasonable attorney's fee, because of defendants' alleged violation of the antitrust laws of the United States.[1] He alleges *inter alia* that he was a motion picture exhibitor in Wausau, Wisconsin, that, in a manner which he alleges in detail, four other exhibitors there were affiliated with or controlled by Twentieth Century Fox Film Corporation, one of the distributor defendants, that he was compelled to sell his theatre by reason of a conspiracy and combination in restraint of trade existing between all of the defendants, that this conspiracy and combination were carried out nation wide by means of refusing certain runs to competitors, discriminatory clearances and prices, and other monopolistic practices set forth, all participated in by the producers and

1. 15 U.S.C.A. § 15.

distributors as well as their subsidiaries, defendants herein. He also charges that he began operating his theatre in May 1942 and continued operating it until February 16, 1946 when he was compelled to sell it because of said conspiracy, which caused him damage in the loss of profits, etc.

He also alleges that, on July 20, 1938, the United States brought a suit in equity against all of said defendant producers and distributors to restrain said conspiracy; and that, in said suit, the government charges of said monopoly, combination and conspiracy included the charges afterwards set forth in plaintiff's amended complaint; that, after trial, findings and a final decree were entered on December 31, 1946 adjudging the producer and distributor defendants herein guilty of the monopoly, combination and conspiracy existing throughout the nation and within the state of Wisconsin, described and charged by the government in said suit; that, on appeal, the Supreme Court of the United States affirmed on June 5, 1950, Twentieth Century Fox Film Corporation v. United States, 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380, and, after denial of petition for rehearing on October 16, 1950, 340 U.S. 857, 71 S.Ct. 70, 95 L.Ed. 627, said "judgments" became final. The amended complaint then alleges that said "judgments and decrees" constitute prima facie evidence in favor of plaintiff and against defendants herein who were parties to that suit "as to all matters respecting which said judgment or decrees would be an estoppel, as between the parties to said suit and the United States"; and further that the running of the statute of limitations in respect of the private rights of action in favor of plaintiff and against any of said defendants arising under the antitrust act, and based in whole or in part on any matter complained of in said government suit, "has been suspended during the pendency of said Government suit; all as provided by Title 15, Section 16 U.S.C.A."

Each distributor and three of the exhibitors pleaded the two-year statute of limitations of Wisconsin.[2]

Defendants made a motion for summary judgment, and plaintiff filed his attorney's affidavit which was considered by the court.[3] On June 21, 1955, the district court ordered the action dismissed as to the exhibitor defendants, without prejudice as to plaintiff's cause of action against the distributor defendants. This followed the filing of a stipulation in which plaintiff agreed that the exhibitors were not parties to the aforesaid government suit.

On October 4, 1955, the district court entered summary judgment dismissing this action as to the distributor defendants with prejudice, on the ground that it was barred by the Wisconsin two-year statute of limitations.[4]

1. It is agreed that the statute of limitations of Wisconsin applies to this case. There is a sharp difference of opinion between the parties as to *which* provision of that statute applies. Defendants claim that § 330.21(1) Wiscon-

2. Two of the exhibitors informed the court of the dissolution of the fourth exhibitor, i. e., Fox Valley Theatres Corporation. This suggestion has not been challenged and we therefore will ignore that defendant named in the amended complaint.

3. The affidavit stated inter alia that Warner Bros. Pictures, Inc. (not a party to this suit) and Warner Bros. Pictures Distributing Corporation entered into a consent judgment on January 1, 1951; "that Loew's Inc. appealed" and the judgment against it was affirmed by the Supreme Court on June 5, 1950, Loew's, Inc., v. United States, 339 U.S. 974, 70 S.

Ct. 1031, 94 L.Ed. 1380, rehearing denied June 29, 1950, and mandate of the Supreme Court filed July 8, 1950, a second petition for rehearing denied on October 16, 1950, 340 U.S. 857, 71 S.Ct. 69, 95 L.Ed. 627 "all in the appeal as to Loew's, Warner Bros." (Pictures, Inc.), "and Twentieth Century Fox; that the appeal time expired for United Artists, Columbia, Universal, and Warner Bros. Pictures Distributing Corporation on April 8, 1950."

4. Section 330.21(1), Wisconsin Statutes, 1951.

sin Statutes 1951 is applicable. It provides a two-year limitation for:

"An action by a private party upon a statute penalty or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statute imposing it provides a different limitation."[5]

Plaintiff claims that § 340.19(4)[6] of said statutes is applicable. It provides a six-year limitation for:

"An action upon a liability created by statute when a different limitation is not prescribed by law."

Obviously, if the two-year limitation applies, the six-year limitation is inapplicable. Hence we shall first consider the claimed applicability of § 330.21(1).

At this point we are confronted with a mystery involving a comma, the disappearance of which is established by the legislative history of this section and its predecessors. The comma in question first appeared in 1878, when there was a general revision of the Wisconsin statutes and what is now § 330.21(1) appeared in the revisor's bill and in the enrolled bill signed by the governor, as follows:[7]

"An action upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, or to the state alone * * *." Rev. Bill 1878, c. 177, § 4224(1).

However, in the process of publication of the revised statutes of 1878, the comma, following the word "penalty", disappeared. Who caused it to disappear and why are matters argued with great earnestness by defendants' counsel. The preface to this publication contains the following statement by the publisher:

"For such defects as shall be found to have intervened, the shortness of the time allowed us ought to be accepted as a sufficient apology." Wis.Rev.Stat. (1878), p. iv.

In a statutory revision in 1931, the comma after the word "penalty" continued to be absent. That is the situation presented by this appeal. Defendants contend that its absence from the published 1878 revision of the statutes and its continued absence from the 1931 revision were accidental and were due to lack of care rather than because of the intention of the legislature. On the other hand, plaintiff contends that a comma after the word "penalty" would have no meaning. He quotes Erie R. Co. v. United States, 6 Cir., 240 F. 28, to the effect that the presence or absence of a comma, according to the whim of the printer or proofreader, is so nearly fortuitous that it is a wholly unsafe aid to statutory interpretation. He also cites King v. Kelly, 1879, 25 Minn. 522, where, at page 525, the court said:

"The punctuation of a statute is of little or no consequence, being ordinarily the work of clerks and printers."

If these utterances were to be accepted at face value, we might find our court opinions, and in fact our newspapers, written without punctuation. Where this would leave all of us is uncertain. We do not share the disdain of these courts for punctuation. Universal use thereof rebuts the assertion that it is ordinarily the work of clerks and print-

---

5. Section 330.21(1), Wisconsin Statutes, 1951.

6. This is obviously an error by plaintiff who undoubtedly means § 330.19(4).

7. In its original form the section under consideration appeared in Revised Statutes of 1849, ch. 127, § 22, and read:

"All actions and suits for any penalty or forfeiture on any penal statute brought by the state, or any person to whom the penalty or forfeiture is given,

in whole or in part, shall be commenced within two years next after the offence is committed, and not afterwards."

The first revision of this section, occurring in 1858, made this section read as follows:

" * * * [a]n action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, or to the state alone * * *." Rev.Stats.1858, c. 138, '§ 19.

ers. Without the hundreds of punctuation marks in plaintiff's own briefs herein, we would find ourselves stumbling through a morass of mere words. The meaning of an expression by word of mouth is, as we know, clarified by pauses, inflections, and gestures of the face, hands and body, of the speaker. The necessary absence of such meaningful aids to the printed word is, in some measure, overcome by the intelligent use of commas, periods, semicolons and other punctuation marks. They are not the mere playthings of clerks and printers. We believe that punctuation is a useful aid in interpreting the meaning of printed or written language.

In the statute under consideration, the presence of a comma after the word "penalty" clearly confines the clause beginning "when the action is given to the party prosecuting therefor * * *", to the word "forfeiture" *only*. So read, an action for a statute penalty, such as in the case at bar, is subject to the two-year limitation. It should be so read.

Supporting this conclusion are Wisconsin decisions especially dealing with changes made by a revisor's bill, such as Wisconsin Power & Light Co. v. City of Beloit, 215 Wis. 439, 254 N.W. 119, at page 123, where the court said:

"We must therefore resort to construction to determine what the statute as it now stands means. In so doing we must bear in mind that the change of the statute was effected by a revisor's bill, enacted by chapter 504, Laws of 1929, and that in such bills there is no intent to change the meaning of the statutes revised; and the statute will not be construed as effecting a change in meaning, unless the language used is so clear and explicit as not to be subject to interpretation. If there *is any ambiguity in the changed*

language, it will be interpreted to mean as in the statutes revised. Oconto County v. [Town of] Townsend, 210 Wis. 85, 244 N.W. 761, 246 N.W. 410; Kugler v. [City of] Milwaukee, 208 Wis. 251, 242 N.W. 481."

In view of the use of both of the words "penalty" and "forfeiture" in this statute, we are of the opinion that the comma was intentionally used *therein* prior to 1931. No sufficient reason has been advanced to cause us to believe that the omission of the comma after the word "penalty" was intentional.[7a] Its absence, at the most, raised an ambiguity which justifies us in construing the statute, in effect at times material in this case, as requiring an action on a statute penalty to be brought within two years after the action accrues. We, therefore, hold, in No. 11548, that the two-year limitation applies to the cause of action of plaintiff against the exhibitor defendants. Accordingly, as to those defendants the judgment of the district court is correct.

2. For the same reasons the two-year limitation statute likewise applies to the cause of action of plaintiff against the distributor defendants. As to them, the next question is, from what date is the running of the two years statute of limitations computed? Defendants say it is June 25, 1948. Plaintiff says it is February 8, 1950. The date of June 25, 1948 is when the district court entered a decree on the mandate of the Supreme Court following its decision of May 3, 1948 in United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L. Ed. 1260. February 8, 1950 is the date on which the district court, after the remandment by the Supreme Court, entered other decrees, which included the matters involved in the remandment. Loew's, Twentieth Century Fox and another [7b] appealed and, on June 5, 1950, the Supreme Court affirmed. On October

7a. Reasoning in an analogous case is convincing; see United States v. Tot, 3 Cir., 131 F.2d 261, at page 265, note 9. This case was reversed on other grounds in

319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.

7b. Not a party to the case at bar.

16, 1950, the petitions of these three for rehearing were denied. The appeal time expired for United Artists Corporation, Columbia Pictures Corporation, Universal Film Exchanges, Inc., and Warner Bros. Pictures Distributing Corporation on April 9, 1950.

The difference of opinion arises from disagreement of the parties hereto as to the application of the word "pendency" in § 16 of the antitrust laws,[8] which at the time relevant to this case, read as follows:

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* This section shall not apply to consent judgments or decrees entered before any testimony has been taken.

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

All of the dates of February 8, 1950, April 9, 1950 and October 16, 1950 were within two years prior to the filing of the case at bar, i. e., September 12, 1951. The amended complaint sets forth a right of action arising under the antitrust laws of the United States and, in so doing, duplicates violations of said laws charged against the same distributor defendants in the paramount case. Thus plaintiff sets forth a private right of action which is, at least in part, grounded upon the same matters of which the government complained in the Paramount case. To the extent that there is that similitude or duplication of charges of violations of the antitrust laws, the final judgment or decree in Paramount, holding that the defendants there violated the antitrust laws, is prima facie evidence here against the defendants in that case who are also defendants in the case at bar,[9] except as to consent judgments or decrees entered before any testimony had been taken. It was the purpose of congress that a person, desirous of taking advantage of the use as prima facie evidence of a judgment or decree rendered in a suit brought by the United States under the antitrust laws, might have an opportunity to do so in a private action commenced after the government's suit had ended, even though his cause of action arose while the latter suit was pending. This is true when the private action is based either *in whole* or *in part* on any matter complained of in the government's suit.

Whether this case was commenced within two years after the termination of the pendency of the Paramount case, within § 16, requires a reference to the opinion in that case.

There, 334 U.S. at page 172, 68 S.Ct. at page 936, the court stated that the findings of the district court were deficient and obscure, in that, "The District Court in its findings speaks of the absence of a 'purpose' on the part of any of the five majors to achieve a 'national monopoly' in the exhibition of motion pictures." The court then said:

"First, there is no finding as to the presence or absence of monopoly

---

8. 15 U.S.C.A. § 16.

9. Cf. Theatre Enterprises, Inc., v. Para- mount Film Distributing Corp., 346 U.S. 537, at page 543, 74 S.Ct. 257, 98 L.Ed. 273.

on the part of the five majors in the *first-run* field for the entire country, in the *first-run* field in the 92 largest cities of the country, or in the *first-run* field in separate localities. Yet the *first-run* field, which constitutes the cream of the exhibition business, is the core of the present cases. * * * Second, we pointed out in United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941 [92 L.Ed. 1236], that 'specific intent' is not necessary to establish a 'purpose or intent' to create a monopoly but that the requisite 'purpose or intent' is present if monopoly results as a necessary consequence of what was done. The findings of the District Court on this phase of the cases are not clear, though we take them to mean by the absence of 'purpose' the absence of a specific intent. So construed they are inconclusive. In any event they are ambiguous and must be recast on remand of the cases. Third, monopoly power, whether lawfully or unlawfully acquired, may violate § 2 of the Sherman Act though it remains unexercised * * * for * * * the existence of power 'to exclude competition when it is desired to do so' is itself a violation of § 2, provided it is coupled with the purpose or intent to exercise that power. The District Court, being primarily concerned with the number and extent of the theatre holdings of defendants, did not address itself to this phase of the monopoly problem. Here also, parity of treatment as between independents and the five majors as theatre owners, who were tied into the same general conspiracy necessitates consideration of this question."

Especially important in this connection is the following statement by the court, 334 U.S. at page 173, 68 S.Ct. at page 937:

"Exploration of these phases of the cases would not be necessary if, as the Department of Justice argues, vertical integration of producing, distributing and exhibiting motion pictures is illegal *per se*. But the majority of the Court does not take that view. In the opinion of the majority the legality of vertical integration under the Sherman Act turns on (1) the purpose or intent with which it was conceived, or (2) the power it creates and the attendant purpose or intent. First, it runs afoul of the Sherman Act if it was a calculated scheme to gain control over an appreciable segment of the market and to restrain or suppress competition, rather than an expansion to meet legitimate business needs. * * * Second, a vertically integrated enterprise, like other aggregations of business units (United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416), will constitute monopoly which, though unexercised violates the Sherman Act provided a power to exclude competition is coupled with a purpose or intent to do so. * * * Likewise bearing on the question whether monopoly power is created by the vertical integration, is the nature of the market to be served (United States v. Aluminum Co. of America, supra, 148 F.2d at page 430), and the leverage on the market which the particular vertical integration creates or makes possible."

At page 174 of 334 U.S., at page 937 of 68 S.Ct., the court said:

"These matters were not considered by the District Court. For that reason, as well as the others we have mentioned, the findings on monopoly and divestiture which we have discussed in this part of the opinion will be set aside."

The court, having stated, 334 U.S. at page 175, 68 S.Ct. at page 938, that the provision of the decree barring the five majors from further theatre expansion should be eliminated, said: "For it too is related to the monopoly question; and the District Court should be allowed to

make an entirely fresh start on the whole of the problem."

The court, 334 U.S. at page 178, 68 S. Ct. at page 939, affirmed the judgment below in part and reversed in part, remanding for proceedings in conformity with the opinion.

While we do not hold that the remandment, insofar as it dealt with the *remedy* only, would be significant here, we do believe that, it is significant that the Supreme Court held that the question of an illegal monopoly had not been completely passed upon by the district court. It therefore remanded for further action therein on a part of the monopoly question. The case, as to the latter matter, remained pending until the district court had passed thereon. In other words, there was a part of the violations charged against the distributors which then remained unresolved by the Supreme Court decision. This was included in that part of the case which was reversed and remanded to the district court for further proceedings.

We are confirmed in the correctness of this view by the district court's opinion after remandment.[10] At page 885, that court said:

"As further reasons for directing a reconsideration of the above issues, we were asked to determine whether the vertical integration of the major defendants, which was held not to be unlawful per se, was conceived with an intent to monopolize or was of such a character as to confer a known monopoly power. If the power be established, a specific intent to monopolize need not be shown. * * *"

Again, at page 893, the court said:

"One of the chief matters referred to us by the Supreme Court is the effect of vertical integration upon competition in the industry. While vertical integration would not per se violate the Sherman Act, the Supreme Court has made it clear that if such integration is conceived with a specific intent to control the market or creates a power to control the market which is accompanied by an intent to exercise the power, the integration becomes illegal.

"We are not satisfied that the plaintiff has shown a calculated scheme to control the market in the conception of the defendants' vertical integration, rather than a purpose to obtain an outlet for their pictures and a supply of film for their theatres. But here we are presented with a conspiracy among the defendants to fix prices, runs and clearances which we have already pointed out was powerfully aided by the system of vertical integration of each of the five major defendants. Such a situation has made the vertical integrations active aids to the conspiracy and has rendered them in this particular case illegal, however innocent they might be in other situations. We do not suggest that every vertically integrated company which engages in restraints of trade or conspiracies will thereby render its vertical integration illegal. The test is whether there is a close relationship between the vertical integration and the illegal practices. Here, the vertical integrations were a definite means of carrying out the restraints and conspiracies we have described. Moreover, we concluded in our prior findings, and the Supreme Court has affirmed our conclusion, that the distribution practices of the defendants constituted an attempt to obtain a monopoly in exhibition forbidden by the Sherman Act, a conclusion which requires the elimination of our Findings 152 and 153, as explained above.

"In respect to monopoly power, we think it existed in this case. As we have shown, the defendants were all working together. There was a

---

10. 85 F.Supp. 881.

horizontal conspiracy as to price-fixing, runs and clearances. The vertical integrations aided such a conspiracy at every point."

Thus it was then for the first time determined that the vertical integrations were active aids to the conspiracy theretofore determined and were therefore violations of the act. The amended complaint herein charges such vertical integrations.

■ These determinations upon remandment were later embodied in the district court's decrees, entered February 8, 1950. These decrees became final on appeal within two years prior to the filing of the suit at bar. Hence this action was not barred by the statute of limitations, except as to defendants RKO Radio Pictures Incorporated and Paramount Film Distributing Corporation.[11] The latter two defendants entered into consent decrees on November 8, 1948 and March 3, 1949, antedating the commencement of this action by more than two years. As to them the order and summary judgment of the district court is affirmed. As to the other distributor defendants (appellees in No. 11609), the order and summary judgment of the district court, dismissing the complaint of the plaintiff with prejudice, is reversed and the cause remanded for further proceedings consistent with this opinion.

As to Fox Wisconsin Theatres, Inc., Fox Wisconsin Amusement Corporation, Wausau Theatres Company, RKO Radio Pictures Incorporated, Paramount Film Distributing Corporation, appellees, affirmed.

Costs herein, in No. 11548, are taxed against appellant.

As to Twentieth Century Fox Film Corporation, Loew's Incorporated, Warner Bros. Pictures Distributing Corporation, Universal Film Exchanges, Inc., Columbia Pictures Corporation, United Artists Corporation, appellees, reversed and remanded for further proceedings.

Costs herein, in No. 11609, are taxed against the last above mentioned appellees.

FINNEGAN, Judge.

I concur in the result but not with all that is said in the opinion.

11. The validity of this exception as to them is expressly recognized by plaintiff's brief.