### In re CLOQUET LUMBER COMPANY.[1]

May 29, 1895.

Nos. 9373—(62).

**Taxation—Validity of Levy.**

G. S. 1894, § 1251, and G. S. 1894, § 1557, read together, provide that within a specified time (which is before the meeting of the state board of equalization) the village council shall by resolution determine the specific amounts of corporate taxes to be assessed on the taxable property of the village, and the last section provides that at a subsequent time (after the meeting of said board) the county auditor shall calculate and fix the rate per cent. thereof, which "shall be determined from the amount of property as equalized by the state board of equalization each year." *Held,* a resolution of the council, which provides for levying "a corporation tax of 1¼ per cent. on the assessed valuation of all real and personal property in the village," is illegal and void. The council should have stated the specific amount of such tax, and not the rate per cent.

Case certified from the district court for Carlton county, Moer, J., upon the application of Carlton county. Affirmed.

*Alpheus Woodward,* County Attorney, and *W. Hammons,* for plaintiff.

*Warner, Richardson & Lawrence* and *Henry Oldenberg,* for defendant.

CANTY, J. On the proceedings to obtain a tax judgment against the real estate of the Cloquet Lumber Company for the taxes remaining delinquent on the first Monday in January, 1894, said company appeared and answered.

[1] Reported in 63 N. W. 628.

On the trial of the issues thereby raised the court found:    That said company is a private corporation, and the village of Cloquet is a municipal corporation, duly organized and existing under Laws 1885, c. 145.    That the real estate here in question is situated in said village, and that said company is the owner of the same.    "(3) That on August 8, 1892, the village council of the village of Cloquet passed the following motion, which was duly entered upon the records of said village, to wit: 'On motion it was decided to levy a corporation tax of (1¼) one and one-quarter per cent. on the assessed valuation of all real and personal property in the village of Cloquet for a general revenue fund for the ensuing year.'    (4) That no other, further, or different resolution or motion was ever made or entered of record by said village council relative to the amount of corporation taxes to be levied and assessed on the taxable property in the village for the current year, and that a portion of the tax for which judgment is demanded in this proceeding is based upon the resolution or motion mentioned in finding 3 hereof.    (5) That thereafter, and on or before the 1st day of September, 1892, the village recorder, under his hand and seal, certified a copy of the entry contained in the minute book of said village, and set out in finding 3 hereof, and forwarded the same to the county auditor of said Carlton county."    The court further found that, besides the other taxes, the county auditor, pursuant to said resolution, and without any other or further authority, entered against said real property a tax of 1¼ per cent. on the assessed valuation thereof for the use of said village.    As a conclusion of law the court found that this portion of the tax is illegal and void, and ordered judgment against the property for said other taxes, but not for this.    Thereupon the question of the validity of said 1¼ per cent. tax was, pursuant to G. S. 1894, § 1589, certified to this court.

It is urged by respondent that this tax is illegal and void, for the reason that the statute requires the village council to specify the amount of tax to be levied, and not the rate per cent.    Laws 1885, c. 145, § 34 (G. S. 1894, § 1251), provides: "The village council shall on or before the 15th day of August in each year, by resolution, to be entered of record, determine the amount of corporation taxes to be levied and assessed on the taxable property in such village for the current year, which shall not exceed in any one (1)

year two per centum of the assessed valuation of such property. * * * On or before the first day of September, in each year, the village recorder shall deliver to the county auditor a copy of all such resolutions, certified under his hand and the corporate seal of such village, and such auditor shall enter such taxes upon the tax books in the same manner as he is required to do in levying town taxes." G. S. 1894, § 1557, provides: "All taxes shall be levied or voted in specific amounts, and the rates per centum shall be determined from the amount of property as equalized by the state board of equalization each year, except such general taxes as may be definitely fixed by law. The state tax shall be levied by the legislature, and the rate of such tax shall be certified by the auditor of state to each county auditor on or before the first day of October, annually. * * * The county taxes shall be levied by the county commissioners at the time of their meeting in July of each year. Such taxes shall be based upon an itemized statement of the county expenses for the ensuing year, which statement shall be included in the published proceedings of the said board, and no greater levy of county tax shall be made upon the taxable property of any county than will be equal to the amount of such expenses, with an excess of five per cent. of the same. The taxes voted by incorporated cities, villages, townships and school districts, shall be certified by the proper authorities to the county auditor, on or before the tenth day of October in each year. The rate per centum of all taxes, except the state tax and such other taxes, the rates of which may be fixed by law, shall be calculated and fixed by the county auditor according to the limitations hereinafter prescribed: provided, that if any county, city, town or school district shall return a greater amount than the prescribed rates will raise, then the county auditor shall only extend such amount of tax as the limited rate will produce."

Construing these two sections together, it is evident that it is the imperative duty of the village council to fix the specific amount of the tax to be levied, not the rate; and that it is the duty of the county auditor to calculate and ascertain the rate. This the county auditor must do after the state board of equalization has equalized the assessment, while the village council are required to determine the amount of money necessary to be raised before said board has.

'acted.    On behalf of the state it is urged that it should be pre-
sumed that the village council inspected the assessment book, and
ascertained the assessed valuation of all the taxable property in the
village, before they passed the resolution in question, and that they
fixed the rate specified in the resolution accordingly.    Even if it
should be so presumed, it does not follow that the resolution could
be upheld, as the assessed valuation of the village might be very
materially changed by the subsequent equalization.    But we are of
the opinion that it should not be so presumed.    Said section 1557
provides that "the rate per centum shall be determined from the
amount of property as equalized by the state board of equalization."
There is as much reason for presuming that the council attempted
to estimate what that valuation would be after it was finally equal-
ized, or that they took a random guess at what such valuation was
or would be without any examination or investigation at all.    Some
of the members may have made such investigation and others not.
To sustain this resolution would be to open the door to the most
loose and reckless methods of conducting public business.    Such a
way of specifying the amount to be raised by taxation might be
made a cover for raising a fund much larger than necessary, with-
out calling public attention to the fact.    The language of the stat-
ute is imperative, the intention plain.    By specifying in dollars and
cents the amount to be raised, it is more readily understood by the
members of the council and the interested public, and there is less
opportunity for fraud, deception, or mistake.

It is further contended on behalf of the state that under the pro-
visions of G. S. 1894, § 1588, the irregularity in the proceedings of
the council is not a defense to such application for a tax judgment.
That section provides: "If all the provisions of law in relation to
the assessment and levy of taxes shall have been complied with,
of which the list so filed with the clerk shall be prima facie evidence,
then judgment shall be rendered for such taxes and the penalties
and costs.    But no omission of any of the things by law provided
in relation to such assessments and levy, or of anything required
by any officer or officers to be done prior to the filing of the list with
the clerk, shall be a defence or objection to the taxes appearing
upon any piece or parcel of land, unless it be also made to appear
to the court that such omission has resulted to the prejudice of the

party objecting, and that the taxes against such piece or parcel of land have been partially, unfairly, or unequally assessed; and in such case, but no other, the court may reduce the amount of taxes upon such piece or parcel, and give judgment accordingly. It shall always be a defence in such proceedings, when made to appear by answer and proofs, that the taxes have been paid, or that the property is not subject to taxation." This section was construed in County of Otter Tail v. Batchelder, 47 Minn. 512, 50 N. W. 536, and we still adhere to that construction: "That no omission of what the law requires to be done shall be a defense unless it be shown that prejudice has resulted therefrom to the party objecting, and that the taxes have been partially, unfairly, or unequally assessed."

But it is our opinion that in the case at bar the taxes were not assessed at all; that there is so wide a departure from the mode prescribed by the statute that it amounts to a failure to assess the tax. To hold otherwise would erase from the statute a provision designed with much care, to prevent the raising of more public revenue than is necessary for legitimate public expenses. This section was not intended to destroy other important safeguards found in the revenue laws. It was intended to prevent the success of technical defenses, and also to prevent the success of meritorious defenses to any greater extent than their merits demand. If the court below could do what the council failed to do,—determine the proper sum to be raised by taxation in this instance,—the omission of the council might not constitute a complete defense to the application for judgment; but the court could not do this.

This disposes of the case, and the order of the court below is affirmed.