STATE v. FRANK H. KEYES.[1]

January 27, 1933.

No. 29,116.

[1]Reported in 246 N. W. 547.

*Frank Palmer,* for appellant.

*J. J. Hadler,* County Attorney, for the state.

HOLT, JUSTICE.

In an action to enforce the payment of delinquent real estate taxes assessed and levied for the year 1929 upon parcels of land

belonging to defendant, findings were made in favor of the state, and defendant appeals from the order denying him a new trial.

The real estate involved consists of some 30 lots in the city of International Falls, Koochiching county, this state, and also certain land outside of the city in said county. All of the lots and the land outside the city are within independent school district No. 4 (now common school district No. 4).

Defendant answered, alleging illegality of certain levies. The main attack is upon the levy of $90,000 for county revenue purposes. The findings of fact are that the assessed valuation of the property in the county for 1929, exclusive of money and credits, was $5,407,941, of the school district, $2,387,512, and of the city, $2,260,939; that the board of county commissioners levied a tax thereon for county revenue purposes in the sum of $90,000; that said sum was actually and in fact necessary to enable said county to conduct and carry on the actual and necessary governmental functions of the county and no more than was necessary for that purpose; and the auditor properly extended this levy against the taxable property, including the said lands of defendant.

G. S. 1923, § 2060, as amended by L. 1927, p. 423, c. 313, 1 Mason, 1927, id. reads:

"There shall be levied annually on each dollar of taxable property, except such as is by law otherwise taxable, as assessed and entered on the tax lists, for the several purposes enumerated, taxes at the rates specified as follows:

"1. For state purposes, such amount as may be levied by the legislature.

"2. For county purposes, such amount as may be levied by the county board, the rate of which tax for general revenue purposes shall not exceed five mills, unless such maximum mill levy will not raise the sum of $40,000.00 based upon the last preceding assessed valuation of said county, in which case the county board by unanimous vote may levy at such rate as will raise the amount levied by the board but not exceeding said sum of $40,000.00."

There is no special finding of the assessed valuation for the year 1928, but the record shows it to have been $5,425,592, which at the five-mill rate would fall far short of yielding $40,000. Hence Koochiching county is in plain terms limited in its levy for county revenue purposes to the sum of $40,000. If this amendment of 1927 (c. 313) limiting the levy for county purposes, is to be given effect, the levy of $90,000 for such purposes and extending it against the assessed property at the rate of over 16 mills cannot be sustained.

The argument in support of the levy is that the court, having found, as above stated, that the sum of $90,000 is no more than necessary to carry on the functions of the county in the manner prescribed by statutes in force when L. 1927, p. 423, c. 313, was enacted, it should be held to have no effect on such statutes. It is correctly asserted that by statutes existing prior to 1927 salaries of county officers in Koochiching county were fixed at specified amounts, other statutes permitted the board or. the court to fix salaries of deputies and clerks, statutes fixed and provided for the payment of certain expenses of officers in conducting the county's business, so that when these outlays fixed by statutes are summed up the total exceeds $40,000, to say nothing of such running expenses as fuel, janitor services, printing, supplies, and other expenses connected with board of prisoners, transporting convicted persons, delinquents or dependents, and insane. It is obvious that the limitations fixed by L. 1927, p. 423, c. 313, prevent the county from raising by taxation the money required to meet its lawfully incurred expenditures. It has no other sources of revenue of any consequence. The amount coming to the county from its one-sixth of the tax on money or credits will yield only about $4,000. It is unfortunate that when this limitation was enacted existing statutes in respect to salaries and expenditures were not amended so that the county would incur no more liability than could be met by taxation as limited by 'said c. 313. But that is no reason why the court should not give effect to the limitation when invoked by a taxpayer. It is impossible to construe c. 313 in any manner other

than as a plain and clear limitation of the authority of a county, situated as Koochiching county, to levy for county revenue purposes any sum in excess of $40,000. There are no exceptions in the law. If it conflicts with statutes in existence when enacted, such prior statutes must yield or be subject thereto. The situation in this county in regard to its usual and ordinary current operating expenses cannot be regarded as an emergency which would authorize the county board to exceed the express limit of taxation such as is found in Upton v. Strommer, 101 Minn. 97, 111 N. W. 956, where a fire had made it imperative that the county board provide funds to repair the damage thereby done the courthouse. We hold that the rate assessed defendant's land for county revenue must be reduced so as to correspond with a levy of $40,000.

The next attack to be noted is on the levy of the ten-mill tax for road and bridge purposes. It appears that under L. 1927, p. 222, c. 147, 1 Mason, 1927, §§ 2620-5 to 2620-13, the county had issued bonds in the sum of $148,000. That law directs that a levy be made before the bonds are issued for such a time as may be necessary to pay the bonds with interest. Section 4 thereof provides that the amount, which may be included by any county which has issued such bonds in its annual tax levy each year for road and bridge purposes, shall not exceed ten mills of the taxable valuation of the county, less the amount required to pay principal and interest of the bonds. We think it clear that for road and bridge purposes and the payment of the interest and maturing principal of these bonds ten mills only was levied. Whatever of the tax thus extended which was not required to pay the interest and matured principal of the bonds went into the bridge fund. The whole levy of ten mills was lawful; and inaccuracy, if any, in the finding that $24,260 thereof went to the one purpose and the balance to the other is here of no concern to defendants. There is no illegality in this ten-mill levy. Defendant's lands were not subjected to more than ten mills on the dollar of that tax. Defendant is evidently mistaken in his contention that the levy under L. 1927, p. 222, c. 147, was not taken into consideration and included in the ten-mill levy for 1929.

The objection to the levy made by the school board is purely on technical grounds. The board adopted a "budget" containing eight items, totaling $165,407. The board considered that by the resolution adopting the "budget" a levy was made. On October 10, 1929, the clerk of the school board, upon blanks provided, certified to the county auditor:

"The amount of taxes voted within the year ending December 31, 1930, to be raised in Independent School District No. 4 of Koochiching county is $165,407 Dollars. This amount you are required to assess upon the taxable property in said district with the taxes of 1930."

The auditor understood that the school board had made the proper levy and extended the tax accordingly. Defendant has failed to prove any substantial defect in the levy of the school tax. See the last part of the opinion in State v. West Duluth Land Co. 75 Minn. 456, 78 N. W. 115. There was no error in permitting a member of the board to testify that it understood the adoption of the "budget" and certifying to the auditor the sum named therein was to be raised by taxation was a levy of the tax by the board.

Defendant contends that the court erred in sustaining the levy by the city of International Falls of one-tenth of one mill upon the taxable property of the city for the organized volunteer firemen's relief association, under authority of L. 1909, p. 223, c. 197, G. S. 1923 (1 Mason, 1927) § 1919. In In re Cloquet Lbr. Co. 61 Minn. 233, 63 N. W. 628, it was held that a levy by percentage was void; that the levying body should levy or determine the amount of the tax to be raised. That rule governs where a certain sum is to be raised by the levying body or board. But by the statute referred to the legislature prescribed the rate which the city was authorized to levy. It could not levy a certain sum for that purpose or any other rate than the one prescribed. State ex rel. Minneapolis F. D. R. Assn. v. City Council, 161 Minn. 103, 200 N. W. 932. It is also said that L. 1909, p. 223, c. 197, has been repealed by L. 1923, p. 204, c. 179, G. S. 1923 (1 Mason, 1927) § 3735. The

1909 statute provides a tax for the benefit of the local organization, the 1923 statute for the "Volunteer Firemen's Aid Fund" to be administered by the commissioner of insurance. The 1923 act (§ 8) contains this provision:

"This act shall not be construed as abridging, repealing or amending the laws of this state relating to fire department relief associations."

The court found that International Falls was a city of the fourth class and that it maintained a duly .organized and incorporated volunteer fire department consisting of 20 members; but it is not found, nor is there any proof, that the fire department of the city has ever taken the steps necessary to permit its members to participate in the benefits intended by said L. 1923, p. 204, c. 179. We therefore are of the opinion that the court did not err in sustaining the levy of one-tenth of one mill made by the city under L. 1909, p. 223, c. 197, which is still in force and cannot be held repealed by L. 1923, p. 204, c. 179.

The final objection affecting the amount of the tax is to the legality of the $2,000 levied for "band" purposes. The levy may not be sustained as made under authority of L. 1927, p. 128, c. 79, 1 Mason, 1927, §§ 1933-17 to 1933-22, for the imposition of such a tax cannot be made unless the electors have first voted in favor thereof. The finding is that there had been no election held to determine whether a tax should be levied for band purposes. So the only authority for the levy of this tax is to be found in G. S. 1923 (1 Mason, 1927) § 1737, which authorizes a city of the fourth class to levy annually a tax not exceeding one mill on the dollar against taxable property therein "for the purpose of providing musical entertainments to the public in public buildings or upon public grounds." The $2,000 levied is well within the one-mill limit. The only thing is whether the levy was in fact made under § 1737.

The court found that the city council made this levy of $2,000 "for musical entertainment in said city of International Falls, but that through inadvertence such levy was stated in the records of the

proceedings of the city council to be for 'Band purposes'; and that such levy while made by the county auditor for a 'Band fund,' was properly extended against all the taxable property of said city, including the property of this defendant, above described, as and for an assessment for musical entertainment in said city."

It was stipulated that the board of tax levy of the city fixed the levy for the "band fund $2,000." Objection was made to the city clerk's stating that the $2,000 was made for musical entertainment. Since the city council had no right to levy the sum for "band fund" but had the right to levy such tax for musical entertainment, we think the court properly received parol evidence in respect to the object of the tax and could find that the words "band fund" were inadvertently used for "musical entertainment." Some support for the reception of parol testimony as to the meaning of the "band fund" is found in Bd. of Co. Commrs. of St. Louis County v. Nettleton, 22 Minn. 356. But perhaps a better reason for sustaining the conclusion that the levy was made under § 1737 is that it is not to be assumed that the city council would do an unlawful act, that is, levy a tax under L. 1927, p. 128, c. 79, when it had not been authorized as therein provided. L. 1927, p. 128, c. 79, contains no repealing clause, and we are not permitted to say that by its enactment the previous statute, G. S. 1923 (1 Mason, 1927) § 1737, was repealed by implication. The purposes for which the money derived from the tax under the two sections is to be applied cannot be said to be the same. Moreover, § 1737 is confined to cities of the fourth class, while L. 1927, p. 128, c. 79, embraces villages and boroughs and all cities except those of the first class.

The last assignment of error is that the court struck from the answer all descriptions of lands purported to be owned by defendant and not found on the published delinquent list. These lands were not on such list because they had been bid in by the state upon a previous tax sale (G. S. 1923 [1 Mason, 1927] § 2106). The learned trial court ruled correctly. The court obtained jurisdiction of only the tracts of real property described in the list filed with the clerk. It is only the enforcement of delinquent taxes assessed

against the tracts of land described in such list that the court can acquire jurisdiction over to enforce or adjudicate the delinquent tax.

The state's contention that defendant is restricted to the remedy given by G. S. 1923 (1 Mason, 1927) § 2069, cannot be sustained, for that statute recognizes that a taxpayer has also a speedy and adequate remedy at law, namely, in an action such as this, where the owner is by G. S. 1923 (1 Mason, 1927) § 2116, given the right to answer and defend.

For the error in sustaining the levy by the county for revenue purposes in a sum exceeding $40,000 the order is reversed with direction to amend the findings of fact and conclusions of law in conformity herewith.

[1]Reported in 246 N. W. 542, 247 N. W. 387.