# INTERNATIONAL HARVESTER COMPANY v. STATE.
# BENNETT MINING COMPANY v. SAME.
# HANNA ORE MINING COMPANY v. SAME.[1]

June 11, 1937.

Nos. 31,235, 31,236, 31,237.

1Reported in 274 N. W. 217.

*John J. Benton* and *J. C. Henley,* for appellant.

*Mitchell, Gillette, Nye & Harries, W. K. Montague,* and *John M. Gannon,* for respondents.

JULIUS J. OLSON, JUSTICE.

Three cases are involved in as many appeals, all taken from judgments entered pursuant to findings. Tried together below and similarly submitted here, a discussion of the fact issues separately is unnecessary as the controlling facts apply to all.

To be noted, however, is the fact that the title in each of the cases is the reverse of what it should be. In the court below the. complaining taxpayers were petitioners and the state of Minnesota and Itasca county, as the tax-enforcing subdivision thereof, were the respondents. To the end that the record may accurately present the relation of the parties, we deem it prudent that the title in the three cases be reversed here. Hereafter we shall refer to the petitioning taxpayers as plaintiffs and to the state as defendant.

The cases involve the taxes levied in 1935, payable in 1936, upon certain parcels of real estate belonging to or leased by plaintiffs in the village of Keewatin. The tax in controversy is one laid by the village, in addition to its general corporate levy, for the maintenance of a tourist camp, the claimed authority therefor being L. 1923, c. 277, § 1, 1 Mason Minn. St. 1927, § 1933-9. The present proceedings were taken and conducted by plaintiffs pursuant to the provisions of L. 1935, c. 300 (3 Mason Minn. St. 1936 Supp. §§ 2126-1 to 2126-14, inc.). They sought thereby to annul only so much of the tax as was represented by a special levy made by the village for such tourist camp purposes; their theory being that such tax and the levy made to accomplish its enforcement were "illegal, unauthorized and void" in that the tourist camp law (L. 1923, c. 277) by its terms limits expenditures for the acquisition and maintenance of such camps, but grants no power to levy a special tax to accomplish its purpose. The court found the facts and construed the act to be as claimed by plaintiffs and, as conclusions of law, granted the petitioned relief.

Counsel for the state have assigned several errors, but we think a discussion of two thereof will settle the controversy on its merits. The points urged are: (1) That there is a misjoinder of parties in that the fee owners of the involved properties were not joined either as parties plaintiff or defendant in the proceedings; (2) that in any event the tax levied is legal and proper on the theory that the law authorized by implication the levy of an additional tax to meet its requirements.

■ L. 1935, c. 300, § 1, provides:

"Any person having any estate, right, title or interest in or lien upon any parcel of land who claims that * * * the tax levied against the same is illegal, in whole or in part, * * * may have the validity of his claim * * * determined by the district court of the county in which the tax is levied by serving copies of" his petition upon certain designated officers of the county. By § 2 it is provided: "Such petition need not be in any particular form, but shall clearly identify the land involved and shall set forth in concise language the claim * * * asserted." Under § 5, "The court shall without delay summarily hear and determine the claims * * * made by said petition and shall direct judgment accordingly, and in the trial thereof shall disregard all technicalities and matters of form not affecting the substantial merits."

The record discloses that certain properties involved herein were not owned in fee by plaintiffs, but the court found (and such finding is well established) that as to the parcels not so owned each petitioning plaintiff was by virtue of its lease with the fee owner required to pay "the taxes lawfully assessed and levied thereon, including such taxes for the year 1935." The burden of meeting all taxes was by specific covenant placed upon the lessee in each such instance. Under the terms of the 1935 act (heretofore quoted), we can see no escape from the conclusion reached by the court that the plaintiffs had a right to proceed in the manner and form stated. The language is plain. There is no ambiguity. Under such circumstances there is no room for construction.

Tax proceedings against real estate are *in rem*. As such there is no personal obligation directly involved insofar as the enforcement of the tax is concerned. But by reason of plaintiffs' covenants with the respective fee owners there was a binding contractual obligation to pay. Any person having such an interest in property sought to be taxed as was owned and possessed by the respective plaintiffs here is, we think, a proper party. Such lessee has a vital interest to protect, and we can find no excuse for denying him the rights and privileges obviously intended by the act.

The next question presented is whether the village of Keewatin is limited to the 20 mills provided by general law. 1 Mason Minn. St. 1927, § 1225. It is conceded that the village was incorporated and operating under the general law pertaining to villages. Section 1225 provides:

"Annually on or before September 15 the council shall determine by resolution the amount of corporation taxes to be assessed, which shall not exceed two per cent. of the assessed valuation of the property taxable in the village. Before levying a tax for any special purpose, the council may submit the question of levying the same to the voters at a general or special election, and it shall be bound by the vote thereon."

There is no claim here that authorization for levying this tax, *i. e.*, for maintaining a tourist camp, was sought or obtained by popular vote.

The trial judge found it "difficult to imply power to levy a special tax" where, as here, "the expenditure is optional" with the village. And further added: "It is a fair inference that, in the absence of a showing of inadequacy of general taxes for the purpose and of an express provision for levying a special tax, no authority to make such a special levy is to be implied." In support thereof the court cited Cover v. Town of Baytown, 12 Minn. 71 (124); Sewall v. City of St. Paul, 20 Minn. 459 (511); State v. Keyes, 188 Minn. 79, 246 N. W. 547; Oconto Co. v. Town of Townsend, 210 Wis. 85, 244 N. W. 761, 246 N. W. 410; 1 Cooley, Taxation (4 ed.) § 83; 2 *Id.* § 507; 6 McQuillin, Mun. Corp. (Rev. ed.) § 2523; 4 Dillon, Mun.

Corp. (5 ed.) §§ 1377-1380. It is significant, too, as suggested by the court, that in the instant case, not only is the act permissive and optional only, but in the title of the act as well as in the act itself no mention of the levying of an additional tax is even mentioned. The statement in the act that the expenditure thereby permitted "shall not exceed in any one year a sum equal to the amount which may be raised by a one mill tax upon the taxable property of such municipality" was clearly intended to place a *limitation on expenditure* and was not a *grant of power* to levy a special tax.

We think the conclusion reached by the court is right. The authorities cited and sound reason as well compel affirmance of the respective judgments; hence each is affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

